# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC D. WRIGHT, | : | |
| | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | NO. 15-3323 |
| JAMES ECKART, ET AL. | : | |
| | : | |
| Respondents. | : | |

## ORDER

**AND NOW**, this 9th day of April , 2018, upon consideration of the Petition for Writ of Habeas Corpus (Doc. No. 1), the Respondents' Response (Doc. No. 9), Petitioner's Memorandum in Support (Doc. No. 16), the Report and Recommendation of Magistrate Judge David R. Strawbridge (Doc. No. 20), and Petitioner's Objections (Doc. No. 28), and following a review of the state court record, I find as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

1. On May 5, 2009, state parole agents received an anonymous tip about the whereabouts of Jerral Spencer, who was the subject of an arrest warrant after he absconded from parole. The tipster identified an apartment in Reading, Pennsylvania as Spencer's residence, reported that Petitioner also lived there, stated that guns and drugs were present in the apartment, and advised that the door to the apartment

---

[1] The procedural background is taken primarily from the R&R, which considered the Petition for Writ of Habeas Corpus, the amended Petition, the Answer to the Petition filed by the District Attorney's Office, Petitioner's Memorandum in support of his Petition, Petitioner's reply to the Commonwealth's response, and the state court record.

building would be locked. Based on that tip, officers obtained an arrest warrant for Spencer, but no search warrant for the apartment.

2. On the morning of May 14, 2009, Parole Officer Jan Switek, along with a fugitive task force, approached the apartment building. Although they found the apartment building door locked, they were able to gain admittance from tenants of another apartment. The officers proceeded to the apartment identified by the tipster and, after knocking for several minutes during which officers identified themselves as state parole agents, Petitioner opened the door. Officer Switek testified at a suppression hearing that as soon as Petitioner opened the door, officers commanded him to show his hands. Switek then looked over Petitioner's shoulder and saw Spencer inside. The task force officers "removed" Petitioner from the doorway, entered the unit, and took Spencer into custody.

3. As they arrested Spencer, officers performed a protective sweep of the apartment. Hearing a woman's voice beyond a closed bathroom door, Officer Switek opened the door and found a young woman hiding. As Switek escorted her out, he observed a magazine for a small caliber weapon sticking out of an open medicine cabinet and a small handgun wrapped in a cloth. Switek continued with the protective sweep in the kitchen, where he discovered heroin baggies in an open cabinet.

4. Based on these observations, investigators from the Reading Police Department obtained a search warrant for the apartment. The search yielded boxes of ammunition and multiple firearm magazines, a handgun with an obliterated serial number, heroin packaging material, crack cocaine, and a bullet-proof vest. Spencer and Petitioner were arrested and charged with crimes arising from the items found in the search.

5. Prior to trial, Petitioner moved for the suppression of all the physical evidence, arguing that the police entry into his apartment was illegal. Following an evidentiary hearing, the trial judge denied the motion. On September 24, 2010, Petitioner was found guilty of possession with intent to deliver, possession of drug paraphernalia, possession of a firearm with altered manufacturer's number, and possession of unlawful body armor. Following a separate trial, he was found guilty on a severed charge of persons not to possess firearms.

6. Petitioner appealed to the Pennsylvania Superior Court to challenge the suppression ruling, alleging that the entry into his apartment was illegal because it was done without a search warrant or reasonable suspicion, and based on an uncorroborated anonymous tip. The Superior Court acknowledged that the apartment was Petitioner's, not Spencer's residence, but held that the search was nonetheless lawful. The Pennsylvania Supreme Court denied allocator on May 10, 2012, and, on October 15, 2012, the United States Supreme Court declined to grant *certiorari*.

7. Petitioner filed a *pro se* petition under Pennsylvania's Post-Conviction Relief Act, 42 Pa. Cons. Stat. § 9541, *et seq.* ("PCRA"), on July 5, 2013, asserting claims of ineffective assistance of counsel at the suppression stage for not raising certain arguments and not seeking additional "suppression remedies" regarding the alleged illegal entry. The PCRA court dismissed the petition on July 11, 2014. The Superior Court affirmed finding that the case was fully litigated and that trial counsel was not ineffective. On May 20, 2015, the Pennsylvania Supreme Court denied review.

8. Petitioner filed his federal Petition for Writ of Habeas Corpus on June 1, 2015, alleging that "counsel never sought to suppress evidence on the ground that the entry

[into his apartment] was unlawful due to the fact that the task force did not possess a reasonable belief that the fugitive [Spencer] lived in the petitioner's home." (Pet. for Writ of Habeas Corpus at 8(b).)

9. Upon review of the parties' briefs, Magistrate Judge David R. Strawbridge filed a Report and Recommendation (R&R) on September 11, 2017, finding that counsel's ineffectiveness claim was meritless and that the state court's rejection of the claim was neither contrary to nor an unreasonable application of federal law.

10. On January 2, 2018, Petitioner filed four objections to the R&R: (1) the Magistrate Judge erroneously stated that "[t]he state court did not unreasonably apply Strickland when it rejected Petitioner's ineffective assistance of counsel claim. . . ."; (2) the Magistrate Judge committed error by stating that " . . . the trial court's factual determination—that Officer Switek observed Spencer from a lawful vantage point—is fully supported by the record . . . Petitioner has not established by clear and convincing evidence that it is incorrect"; (3) the Magistrate Judge improperly stated that "[t]he state court reasonably concluded on PCRA review that the trial counsel could not have been ineffective for failing to raise a meritless claim"; and (4) the Magistrate Judge committed an error by applying 28 U.S.C. § 2254(d) as the legal standard for petitioner's ineffectiveness claims. (See Pet's Objections.)

**DISCUSSION**

11. Petitioner's objections all effectively contend that while the state courts and the Magistrate Judge considered whether Officer Switek's *observation* of Spencer from outside of Petitioner's apartment was lawful, they failed to consider the fact that the police did not have a reasonable belief that Spencer lived there before they crossed

4

the threshold of Petitioner's home in order to *arrest* Spencer. Relying on the Supreme Court cases of Steagald v. U.S., 451 U.S. 204 (1982) and Payton v. N.Y., 445 U.S. 573 (1980), Petitioner argues that where the authorities do not have a reasonable belief that the subject of an arrest warrant lives in a certain residence, they may not execute an arrest warrant at that residence without first obtaining a search warrant.

12. In its decision in Steagald v. United States, 451 U.S. 204 (1981), the United States Supreme Court held that, absent exigent circumstances or consent, the police cannot lawfully search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. Id. at 213–14. The holding in Steagald was premised on the fact that a warrant generally authorizing the arrest of another individual "did absolutely nothing to protect [the third party's] privacy interest in being free from an unreasonable invasion and search of his [or her] home." Steagald, 451 U.S. at 213.

13. Where the police seek to execute an arrest warrant inside what they believe to be the home of the arrestee, however, the requirements are different. In Payton v. N.Y., 445 U.S. 573 (1980), the Supreme Court concluded that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id. at 603. Distilling this holding, the Third Circuit explained that Payton "requires that officers have a reasonable belief that the arrestee (1) lived in the residence and (2) is within the residence at the time of entry." United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006) (quotation marks omitted).

14. In this case, the state courts found—and Petitioner concedes—that the officers had a valid arrest warrant for Spencer and maintained a reasonable belief that Spencer was within the apartment at the time of entry. Therefore, the sole issue in dispute is whether the officers had a reasonable belief that Spencer lived in the apartment.

15. "To determine whether the police had probable cause to believe a suspect was residing and present in a home, [courts must] apply a 'common sense approach' and consider 'the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality.'" Veal, 453 F.3d 167–68 (quoting United States v. Magluta, 44 F.3d 1530, 1535, 1536 (11th Cir. 1995)). "Reasonable belief" means "probable cause" to form a belief about the suspect's residence. U.S. v. Vasquez-Algarin, 821 F.3d 467, 477 (3d Cir. 2016). A probable cause determination is dependent upon the "totality of the circumstances," which, "in the context of second-hand information, encompasses considerations such as the basis and reliability of the information and the receiving officer's ability to corroborate its content." Id. at 480. Courts have found that anonymous tips corroborated by the arrestee's actual presence at the residence may, under certain circumstances, be sufficient to create a reasonable belief that an arrestee lives at that residence. See U.S. v. Jackson, 576 F.3d 46, 469 (7th Cir. 2009) (concluding "the police had enough evidence to easily satisfy a probable cause standard" where they received a tip that the arrestee was residing at a friend's apartment and, on their arrival, the arrestee's girlfriend confirmed he was inside); Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 534 (D.N.J. 2013) ("[I]t was reasonable for the Marshals to believe that [Phillip] was residing there, because at the time they approached the residence (1) they were in possession of a

warrant that listed that address as his home . . . and (2) they had information from a confidential source indicating that Phillip had recently used Dwayne's cell phone, and that Dwayne lived at 103 S. 35th St.").

16. In support of his objections regarding the search of his apartment, Petitioner posits two arguments. First, he contends that the neither the state courts nor the Magistrate Judge ever explicitly found that the officers had such a reasonable belief in Spencer's residence.[2] Moreover, he claims that, even to the extent this issue was addressed, the evidence is insufficient to support any such probable cause belief.

17. Contrary to Petitioner's first argument, the Pennsylvania Superior Court directly confronted this question, framing the issue as whether "before the task force entered the apartment, the task force . . . [it] possessed a 'reasonable belief' that Mr. Spencer actually resided in the apartment." (ECF No. 9-5, at p. 39.) Considering testimony from the suppression hearing, the Superior Court undertook a thorough review of the information available to the task force prior to its entry into the apartment. The Court found that the uncorroborated anonymous tip—in which the informant stated that the apartment was Spencer's residence—did not alone provide the officers with the necessary reasonable belief that Spencer lived in the apartment. It determined, however, that the tip was sufficiently corroborated by Spencer's presence in the apartment, so long as Officer Switek observed Spencer from a lawful vantage point. (Id. at 40–41.) The Superior Court concurred with the trial court's finding that

---

[2] Petitioner argues that "there is not one single sentence in the entire 25 page direct appeal memorandum . . . stating, explicitly for the record, (1) whether or not the reasonable belief requirement in Payton was satisfied, (2) whether or not the search warrant requirement in Steagald was satisfied; nor (3) whether the actual entry into the petitioner's home was lawful." (Pet.'s Objections at 25.)

7

Officer Switek observed Spencer in the apartment from a lawful vantage point, thereby corroborating the anonymous tip and providing a sufficient basis for the officers' reasonable belief that Spencer resided in the apartment. (Id. at 42–43.) In turn, under Payton, the Court concluded that the officers lawfully entered the apartment, despite the fact that subsequent evidence later revealed that Spencer did not actually live there.

18. As to his second argument, Petitioner does not challenge the state courts' factual findings, but simply disputes the conclusion that Switek's observation of Spencer in the apartment, in and of itself, corroborated the officers' belief that Spencer lived there. (Pet's Objections at 16.) He argues that "[c]onsidering the totality of the circumstances, the task force had nothing to rely upon other than Spencer's visible presence within the apartment plus an unreliable and uncorroborated anonymous tip, in order to make an attempt at satisfying the 'reason to believe' requirement in Payton." (Id. at 17.) According to Petitioner, this determination was legally incorrect.[3]

---

[3] Petitioner cites to the Ninth Circuit decision in Watts v. Sacramento, 256 F.3d 886 (9th Cir. 2001)—a case with allegedly similar facts—in support of his argument that the officers here did not have a reasonable belief that Spencer resided in the home. Watts is not dispositive for several reasons. First, although Watts is a decision by a Court of Appeals, it is not "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Moreover, as Watts was brought as an appeal in a civil case wherein the district court granted summary judgment in favor of the officers, the Ninth Circuit did not find that the officers lacked a reasonable belief that the arrestee lived in the house. Rather, it reversed the district court's ruling on the basis that a genuine issue of material fact existed as to whether it was reasonable for deputies to believe that the suspect named in arrest warrant was both present in and a co-resident of the third party's home.

19. Under the applicable standard of review of 28 U.S.C. § 2254(d), I find that Petitioner's argument provides no basis for habeas relief. Pursuant to this statute, an application for a writ of habeas corpus on behalf of a person in state custody may not be granted unless the state court's adjudication of the claim resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner—a standard which creates a highly deferential standard for state court rulings. Renico v. Lett, 559 U.S. 766, 773 (2010). Habeas relief may be granted "only if the petitioner demonstrates that the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Eley v. Erickson, 712 F.3d 837, 846–47 (3d Cir. 2013) (quoting Harrington v. Richter, 562 U.S. 86 (2011)).

20. I agree with Magistrate Judge Strawbridge that the Superior Court's ruling was not an unreasonable application of federal law. The police received an anonymous tip that Spencer resided at a particular address in Reading, that Petitioner also lived at that apartment, that guns and drugs were present, and that the door to the apartment building would be locked. Upon obtaining an arrest warrant for that residence, the officers proceeded to that address, found the apartment door locked as indicated, and knocked on the door. Petitioner opened the door, at which point Officer Switek saw Spencer inside the apartment. Based upon that evidence the Superior Court

determined that the officers had a reasonable belief that Spencer resided in that apartment.

21. Petitioner has failed to establish that the Superior Court's determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Eley, 712 F.3d at 846–47 (quotations omitted). In turn, Petitioner has not, and cannot, establish that the state court's determination that trial counsel was not ineffective for failing to further push this issue was contrary to or an unreasonable application of federal law under Strickland v. Washington, 466 U.S. 668 (1984).

**WHEREFORE**, it is hereby **ORDERED** that:

1. Petitioner's objections (Doc. No. 28) are **OVERRULED**;
2. The Report and Recommendation (Doc. No. 20) is **APPROVED** and **ADOPTED**;
3. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED** with prejudice and **DISMISSED** without a hearing;
4. There is no basis for the issuance of a certificate of appealability; and
5. The Clerk of Court is directed to mark this case **CLOSED**.

        **BY THE COURT:**

        /s/ Mitchell S. Goldberg
        _____
        **MITCHELL S. GOLDBERG, J.**